UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTEMIZ ADKINS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>GARRETT ADKINS,<br><br>　　　　Respondent. | Case No. 19-cv-05535-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 46 |

Pending before the Court is the motion for attorneys' fees filed by Petitioner Artemiz Adkins. Dkt. No. 46. Petitioner seeks a total of $128,524.32 in attorneys' fees and costs, as well as for additional expenses incurred for the return of her daughter A.F.A. to Switzerland. *Id.* The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

**I.　BACKGROUND**

On September 3, 2019, Petitioner filed a petition for the return of her daughter to Switzerland pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 ("the Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), codified at 22 U.S.C. §§ 9001, *et seq*. Dkt. No. 1. After considering the parties' testimony and evidence submitted at the October 1, 2019 evidentiary hearing, as well as the parties' additional filings in this case, the Court found that A.F.A.'s habitual residence is Switzerland and granted the petition. *See* Dkt. No. 44. The Court ordered Respondent to return A.F.A. to Switzerland within 14 days and to remain there until the courts of that country resolved the custody issues. *See id.* at 14. The Court further granted

Petitioner the opportunity to file a motion pursuant to 42 U.S.C. § 9007(3), to recoup the fees and costs that she incurred to bring this petition.

## II. LEGAL STANDARD

ICARA provides for an award of necessary expenses incurred by a successful petitioner in a matter brought pursuant to the Convention:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

*See* 22 U.S.C. § 9007(b)(3). The purposes of awarding fees and costs under § 9007(b)(3) "are to restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter [violations of the Hague Convention] from happening in the first place." *See* Hague International Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01. The respondent bears the burden of establishing that an award of fees and costs "would be clearly inappropriate" under the circumstances. *See* 22 U.S.C. § 9007(b)(3).

## III. DISCUSSION

Petitioner seeks to recoup several categories of fees and costs incurred in bringing this action as well as in litigating in other fora. She seeks:

- $17,930 in attorneys' fees and $619.50 in costs for Petitioner to appear ex parte to dismiss a state court action that Respondent filed in Sonoma County Superior Court in August 2019, seeking dissolution of marriage and custody of A.F.A., *see* Dkt. No. 8-5, Ex. E;

- $19,714.31 in attorneys' fees and costs incurred relating to an action that Petitioner filed in Switzerland in August 2019, seeking custody of A.F.A., *see* Dkt. No. 8-7, Ex. G;

- $6,475 incurred in hiring a private investigator in California prior to filing this action "to determine and ensure the whereabouts of the minor child";

- $80,231.85 in attorneys' fees and costs incurred in this action; and
- $3,553.63 in travel expenses to California for the evidentiary hearing and back to Switzerland.

*See* Dkt. No. 46; *see also* Dkt. No. 47, Exs. B1, B2; Dkt. No. 48 Ex. A1–C2.  These requested fees total $128,524.29.[1]  *Id.*

### A. Amount of "Necessary Expenses"

Respondent appears to concede that Petitioner is entitled to an award of attorneys' fees and costs in this case under § 9007(b)(3).  *See* Dkt. No. 52 at ¶ 3.  However, he contends that Petitioner's requested fees are unreasonable.  *See* Dkt. Nos. 52, 54.  Respondent urges the Court to consider a variety of factors to reduce the fees, including (1) Respondent's financial circumstances; (2) the lower fees and costs he incurred in litigating this action; and (3) that a fee award is not necessary for deterrence because since the Court's order granting the petition for the return of A.F.A. to Switzerland, he has complied with the law and all court orders.  *See id.*

As an initial matter, the Court notes that Petitioner seeks $28,263.81 in fees and costs related to proceedings in California state court and in Switzerland.  *See* Dkt. No. 46; *see also* Dkt. No. 47 at ¶ 7; Dkt. No. 47-1, Ex. A1; Dkt. No. 48-1, Ex. A.  Petitioner reasons that these proceedings would not have occurred but for the wrongful removal of A.F.A. from Switzerland, so she should be compensated for them.  *See* Dkt. No. 46 at 7.  However, ICARA provides for an award of necessary expenses incurred in "*an action brought under section 9003 [of the Convention].*"  *See* 22 U.S.C. § 9007(b)(3) (emphasis added).  The statute does not authorize the Court to award fees and costs in ancillary matters litigated in other fora, and Petitioner does not identify any other basis for the Court's authority to do so.  The Court finds that it would be improper to award fees for work done in other cases before other courts.  *Accord Albani v. Albani*, No. 15CV1980, 2016 WL 3074407, at *1 (S.D. Cal. May 31, 2016).

Petitioner next seeks $6,475 in expenses incurred by a private investigator "to determine and ensure the whereabouts of the minor child."  *See* Dkt. No. 47 at ¶ 6; *see also* Dkt. No. 47-3,

---

[1] Petitioner incorrectly sums the expenses as $128,524.32.  *See* Dkt. No. 46 at 1, 4.

3

Ex. B1; Dkt. No. 47-4, Ex. B2.  This includes approximately 36 hours spent in Petaluma, California "watch[ing] house," "follow[ing] grandmother," and "watch[ing] daycare" over the course of a few days.  *See* Dkt. No. 47-4, Ex. B1.  Petitioner fails to explain why an investigator was necessary to locate A.F.A. at her grandparents' home in Petaluma.  *See* Dkt. No. 47 at ¶ 6.  As Respondent explains, Petitioner knew that Respondent had been living there with his parents since he left Switzerland and returned to the United States in December 2018.  *See* Dkt. No. 54 at 5–6.  Petitioner had visited A.F.A. there "several times" and "had nearly daily FaceTime contact with her."  *See id.*; *see also* Dkt. No. 52 at ¶ 4; Dkt. No. 44 at 5–6.  In her reply brief, Petitioner offers no explanation as to why a private investigator was nevertheless necessary in this case.  The Court therefore finds the $6,475 in private investigator fees unreasonable.

Petitioner also seeks the attorneys' fees and costs incurred by her counsel, the Bechtel Zambrano Baluyot Family Law Firm ("BZB Family Law"), in litigating this case.  *See* Dkt. No. 46.  After deducting the requested fees and costs for the litigation in California state court, as discussed above, the Court calculates that Petitioner seeks $80,231.85 for fees and costs associated with this action.  *See* Dkt. No. 47 at ¶¶ 6–7.[2]  Petitioner provides redacted versions of her invoices from BZB Family Law, which include the fees charged for attorneys, paralegals, and legal assistants through September 2019, as well as high-level explanations of how the time was spent.  *See* Dkt. No. 47-1, Ex. A1; Dkt. No. 47-2, Ex. A2.  The invoices identify nine different timekeepers who worked on this case.  *Id.*  Petitioner also indicates that she has outstanding another $21,957 in fees and $627.69 in costs from BZB Family Law for work incurred in October 2019.  *See* Dkt. No. 47 at ¶ 6.  Given the timeline of this case, the Court understands that this would include time spent preparing for and participating in the evidentiary hearing as well as the filing of this motion for attorneys' fees.

Respondent first suggests that he cannot determine the reasonableness of these requested fees because Petitioner did not provide "itemized statements" with which he could calculate the lodestar.  *See* Dkt. No. 54 at 6.  To determine whether requested attorneys' fees are reasonable,

---

[2] $98,781.35 (total legal fees and costs) - $17,930 (California state court attorneys' fees) and $619.50 (California state court costs) = $80,231.85.  *See* Dkt. No. 47 at ¶¶ 6–7.

4

1 courts generally calculate the "lodestar" by multiplying the number of hours reasonably expended
2 on the litigation by the reasonable hourly rate for the region and for the experience of the lawyer.
3 *See, e.g.*, *Rosasen v. Rosasen*, No. CV1910742JFWAFMX, 2020 WL 4353679, at *2 (C.D. Cal.
4 June 5, 2020); *see also In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.
5 2011). After calculating the "lodestar" amount, the court must determine whether that amount
6 should be adjusted, considering factors such as (1) the time and labor required for the litigation;
7 (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal
8 services properly; (4) the preclusion of other employment by the attorney due to acceptance of the
9 case; (5) the customary fee; (6)whether the fee is fixed or contingent; (7) time limitations imposed
10 by the client or the circumstances; (8) the amount involved and the result obtained; (9) the
11 experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the
12 nature and length of the professional relationship with the client; and (12) awards in similar cases.
13 *See Rosasen*, 2020 WL 4353679, at *2 (citing *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d
14 973, 982 (9th Cir. 2008)).

15 Here, Respondent does not address the BZB Family law invoices in his analysis, which
16 identify the requested fees and costs through September 2019. *See* Dkt. No. 47-1, Ex. A1; Dkt.
17 No. 47-2, Ex. A2. Instead, Respondent urges the Court to consider his own attorneys' fees as an
18 appropriate benchmark for reasonable hourly rates and time spent litigating this case. *See* Dkt.
19 No. 54 at 3, 6; *see also* Dkt. No. 53 at ¶¶ 8–10. But the BZB invoices provide useful information,
20 including the fees charged for attorneys, paralegals, and legal assistants through September 2019.
21 *See* Dkt. No. 47-1, Ex. A1; Dkt. No. 47-2, Ex. A2. The attorneys' hourly rates fall between $325
22 and $550; paralegals' rates between $150 and $300; and legal assistants' rates between $150 and
23 $175. *See id.*; *see also* Dkt. No. 47 at ¶ 4. The two primary timekeepers, who account for
24 approximately 85% of the time incurred in this case, are (1) Ray Baluyot, a partner with over 25
25 years of experience, billing at $550 an hour; and (2) associate Stephen Stanwood, billing at $375
26 an hour. *See id.* Respondent's counsel explain that their standard rates are both $450 an hour,
27 though they discounted their rates for Respondent, and their paralegals and legal assistants bill at
28 $150 an hour. *See* Dkt. No. 54 at 3. Even assuming the rates charged by Respondent's counsel

established comparable legal services in the community, Petitioner's requested rates are very similar. The Court finds the rates charged by Petitioner's counsel reasonable, particularly given the timing and specialty of the work involved.

As to the amount of time Petitioner's counsel spent in this case, Respondent proffers the 43.35 hours that Mr. Richard Helzberg spent litigating this action as an example of what would be reasonable in this case. *See* Dkt. No. 54 at 3. Respondent points to his own billing records to further support his contention. *See* Dkt. No. 53 at ¶ 8; *see also* Dkt. No. 53-1, Ex. A. Yet the explanation as to how counsel spent his time in this case are completely redacted as "confidential." *See* Dkt. No. 53-1, Ex. A. Without more detail, the Court simply has no way of identifying how Respondent's counsel spent time in this action, let alone comparing that time to the time Petitioner's counsel spent to determine whether such time is reasonable. In any event, the Court does not find the time that Petitioner's counsel incurred in this action unreasonable given the complexity of this case. Although Petitioner's records could be more detailed, counsel has identified approximately 135 hours of time incurred in the federal action through September 2019. *See* Dkt. No. 47-1, Ex. A1; Dkt. No. 47-2, Ex. A2. And given their hourly rates and requested fees, they are requesting another approximately 50 hours of time in October. *See* Dkt. No. 47 at ¶ 6. In addition to preparing and filing the petition for the return of A.F.A. to Switzerland, counsel for Petitioner also briefed a motion for a temporary restraining order; prepared for and attended an order to show cause hearing why the relief requested in the petition should not be granted; prepared and filed a supplemental memorandum regarding habitual residence under the Convention; and prepared for and attended a half-day evidentiary hearing regarding A.F.A.'s habitual residence. Moreover, counsel litigated this case under considerable time constraints, as required by the Convention. Thus, the Court finds that the time spent in this action was reasonable given the specialized nature of the action, the difficulty of the legal issues, the pace of the litigation, and the quality of lawyering by Petitioner's counsel.

Lastly, Petitioner seeks $3,553.63 in travel expenses to and from Switzerland. This includes $2,088.83 for Petitioner's flight from Switzerland to California for the proceedings in this action, as well as $1,464.83 for the two tickets for Petitioner and A.F.A. to travel from California

1    to Switzerland.  *See* Dkt. No. 48-2, Ex. B; Dkt. No. 48-3, Ex. C1; Dkt. No. 48-4, Ex. C2.

2    Respondent does not contest these costs, and the Court finds that they are reasonable under the

3    circumstances.  *See* Dkt. No. 52 at ¶ 3 ("I do not dispute the court costs and transportation costs

4    related to the return of our child.").

### B.  Inability to Pay

Respondent argues that the requested expenses are "clearly inappropriate," and the Court should nevertheless exercise its discretion to reduce Petitioner's fees as by some amount because of the financial hardship it would cause him.  *See* Dkt. No. 54 at 3–6.  Respondent points out that while he was in Switzerland in 2018 he did not earn any income; he and Petitioner owe money to the IRS from selling their business when they separated; he and Petitioner have outstanding "community" credit card debt; and he still owes over $13,000 to his own attorneys for this action.  *See id.*; *see also* Dkt. No. 52 at ¶¶ 10–15.  "[A] respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA."  *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 81 (2d Cir. 2016); *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir. 1995) (reversing award of fees and legal costs as excessive and abuse of discretion based on respondent's "financial circumstances").

Respondent acknowledges that he is now employed by Burkhart Dental Supply, and earns $120,000 as base salary and a 2% commission on all equipment sales.  *See* Dkt. No. 52 at ¶ 11; *see also* Dkt. No. 52-2, Ex. B.  The Court finds that Respondent's work experience and current position indicate that he has significant earning potential, even if he did not work while in Switzerland.  Additionally, Respondent does not claim that he is obligated to provide any financial support to A.F.A., and thus there is no evidence that she will be adversely impacted by the Court's award.  *See, e.g.*, *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004) ("[P]reserving the ability of a respondent to care for her child is an important factor to consider.").  And to the extent Respondent identifies tax obligations and "community debt," these are borne by both Petitioner and Respondent.  The Court does not minimize the financial obligations facing Respondent, or the significant fees often incurred in litigating actions in federal court.  Nevertheless, the Court is sensitive to the fact that Respondent is essentially asking the Court to remove at least some of the

7

financial burden on him for abducting A.F.A. and place it on Petitioner, who had to file a federal action to ensure the return of A.F.A. to Switzerland, and who shares in those community debts. One purpose of ICARA's fee-shifting provision, however, is to "restore the applicant to the financial position he or she would have been in had there been no removal or retention." *See* Hague Convention, 51 Fed. Reg. 10494-501, 10511.

The Court therefore finds that Petitioner is entitled to recover the fees and costs incurred in litigating this action ($80,231.85) as well as the cost of her flights to and from Switzerland. Doing so serves the dual purposes of § 9007(b)(3) to restore Petitioner to her financial position before filing the petition and to discourage the wrongful removal of children from their habitual residences. The Court understands Respondent's argument that the requested fees and costs are significant. But the Court does not find them "clearly inappropriate," and does not believe a further reduction is warranted under the circumstances. *See* 22 U.S.C. § 9007(b)(3). As the Ninth Circuit has explained, "[i]f [Respondent] didn't want to bear the cost of delay, he shouldn't have caused it. Better yet, he shouldn't have abducted the child in the first place." *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010).

## IV.   CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's motion for attorneys' fees and costs in the amount of $80,231.85 for attorneys' fees and costs incurred in litigating this action and $3,553.63 in travel expenses between California and Switzerland, for a total of $83,785.48.

**IT IS SO ORDERED.**

Dated:  11/15/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge